Jacquelyn A. **HOLSINGER,** Plaintiff,

v.

**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts Corporation,** Defendant.

No. 90–72471.

United States District Court,
E.D. Michigan, S.D.

June 10, 1991.

---

Matthew C. Quinn, Cooper, Shifman, Gabe, Quinn & Seymour, Royal Oak, Mich., for plaintiff Jacquelyn A. Holsinger.

Richard J. Gianino, Plunkett & Cooney, Detroit, Mich., for defendant New England Mut. Life Ins. Co.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S 5 APRIL 1991 MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

## FACTS

The essential facts are not in dispute. The plaintiff's decedent ingested a quantity of drugs which resulted in his death. Plaintiff made a claim, through the decedent's ERISA plan, against the defendant insurance company based on the accidental death of her decedent. The defendant denied the claim, claiming that the death was not accidental. This suit followed.

Defendant filed a motion for summary judgment on 5 April 1991. Plaintiff responded on 3 May 1991. No oral argument was heard. The matter will be disposed of by the following written opinion.

## CONTENTIONS

Defendant makes three contentions in support of summary judgment. First, defendant claims that plaintiff's loss was not a result of a bodily injury effected solely through external, violent or accidental means, directly and independently of all other causes. Second, defendant contends that plaintiff's loss resulted directly or indirectly, wholly or partially, from intentionally self-inflicted injury. Third, plaintiff's loss was not free from contribution by a bodily or mental infirmity. In response, plaintiff argues, at length, that the language of the insurance contract regarding accidental means is ambiguous and, therefore, precludes summary judgment.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the non-

movant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

### ANALYSIS

■ Having reviewed the pleadings and exhibits and being otherwise familiar in the premises, the court finds that the policy language "accidental means" is ambiguous and, therefore, summary judgment cannot be entered on that basis. Alternatively, determination of whether an injury is by accidental means under federal common law [1] involves a question of fact: whether the insured *reasonably expected* the injury in question to result from his actions.

The court's conclusion is consistent with *Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077 (1990). In *Wickman,* the court noted that in order to find that an injury was accidental the *"fact-finder* [must] determine[ ] that the insured did not expect an injury similar in type or kind to that suffered[.] [T]he *fact-finder* must then examine whether the suppositions which underlay that expectation were reasonable." *Id.* at 1088 (emphasis added).

■ On the other hand, the court finds that the language "self-inflicted injury" is unambiguous. In *Wickman,* the court, in commenting on identical language, noted that "[w]e are bound by this *plain language....*" *Id.* at 1084 (emphasis added). When applied to the undisputed facts of this case, the self-inflicted injury exclusion supports summary judgment. Alternatively, even if application of the self-inflicted injury language exclusion presents questions of fact, the court finds that there is no genuine dispute as to those questions of fact.

In the policy, under the heading "RISKS NOT ASSUMED," the following language appears:

NO AMOUNT SHALL BE PAID UNDER THE FOREGOING PROVISIONS FOR ANY LOSS RESULTING DIRECT-

---

1. "The benefit provisions of an ERISA regulated group life insurance program must be interpreted under principles of federal substantive law."

*Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077 (1st Cir.1990).

LY OR INDIRECTLY, WHOLLY OR PARTIALLY FROM:
(1) SUICIDE OR *INTENTIONALLY SELF-INFLICTED INJURY*, WHETHER SANE OR INSANE.

To determine whether this "plain language" applies, the court must answer four questions. First, was the ingestion of drugs intentional? Second, did the decedent know that the ingestion of drugs would be likely to cause an injury? Third, did the ingestion of drugs cause an injury? Fourth, did the loss result from the injury? If there is no genuine factual dispute as to any of these questions, summary judgment is appropriate.

There is no dispute that the decedent intentionally ingested the drugs.

Because the drugs ingested by decedent can have therapeutic value when taken appropriately, the definition of injury must be carefully circumscribed. First, it should be noted that even drugs taken by prescription can produce injury. Few allopathic drugs are without side effects. Such side effects are clearly injury in the broadest common sense use of the word. Drugs taken under prescription, however, also produce a benefit, a benefit which, in the opinion of the prescribing physician, outweighs the costs—or injury—of the side effects. Thus, a loss resulting from the appropriate ingestion of prescription drugs is not an injury because the professional expectation is that ingestion of the drugs will yield a net benefit.

If prescription drugs are ingested for a purpose other than the therapeutic effect for which they are designed, as was the case in the instant matter, the sole questions are whether such ingestion could produce an injury and whether the person ingesting the drugs knew they could produce an injury. For example, if a child ingests a bottle of barbiturates because he thinks they are candy, it is clear the child does not know that the ingested drug can produce injury.

It is important to note that the injury caused by an ingestion of prescription drugs taken for a purpose other than the therapeutic effect for which they are designed need not be the injury that results in the loss. For example, when the loss is death, it is not necessary that the person ingesting the drugs know that death could result. If the person ingesting the drugs has a general cognizance that the drugs could produce some injury, it is enough that there is some causal relation between the injury caused and the ultimate loss. For example, in *Metropolitan Life Ins. Co. v. Main*, 383 F.2d 952, 958 (5th Cir.1967) the court noted that the "effect of alcohol and drugs causes an *injury* of a chemical nature on ... the brain...." (emphasis added).

It is clear that ingestion of the drugs by the decedent could cause an injury. The quantity of codeine ingested by the decedent produced an injury of a chemical nature, depressing the bodily functions. It is equally clear that the decedent, a pharmacist and long time drug abuser, knew the drugs could cause such an injury. It is irrelevant that decedent may have believed that due to his tolerance to drugs, he would not die from the ingestion of the drugs.

It is beyond peradventure that the drugs did cause the injury that decedent expected them to and that this injury ultimately contributed to his death. Accordingly, the court holds that there is no question of material fact as to whether decedent's death was the result of an intentionally self-inflicted injury. Summary judgment will be entered in favor of defendant.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's 5 April 1991 motion for summary judgment is GRANTED.