Robert L. BEVANS and Roger
J. Bevans, Plaintiffs,

v.

IRON WORKERS' TRI–STATE WEL-
FARE PLAN and Mid–America
Pension Plan, Defendants.

No. 96-4035.

United States District Court,
C.D. Illinois,
Rock Island Division.

Jan. 27, 1997.

**358**

Samuel S. McHard, Katz McHard Balch Lefstein & Fieweger, P.C., Rock Island, IL, for Plaintiffs.

Terrance B. McGann, Collins P. Whitfield & Associates, Chicago, IL, Collins P. Whit-field, Janet L. Adams, Daniel P. McAnally, Mary Elizabeth Halloran, Todd A. Miller, Whitfield & Gregorio, Chicago, IL, for Defendant.

## ORDER

MIHM, Chief Judge.

This matter is now before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment [#12] is DENIED, and Defendant's [1] Motion for Summary Judgment [#15] is GRANTED.

### Factual Background

Defendant, Iron Workers' Tri–State Welfare Plan (the "Plan"), is a self-funded employee welfare benefit plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1). (Defendant's Statement of Undisputed Facts ("Defendant's Statement") at 1.) As such, the purpose of the Plan is to provide health and welfare benefits to eligible participants and beneficiaries. (Plaintiffs' Response to Statement of Undisputed Facts ("Plaintiffs' Response") at 1.) It is undisputed that Plaintiff Robert Bevans ("Mr. Bevans") was an eligible participant in the Plan at all relevant times and that his son, Plaintiff Roger Bevans ("Roger"), was eligible to receive benefits as a dependent. (Defendant's Statement at 3.)

The facts underlying this litigation follow. On May 16, 1995, Roger, then a minor, consumed some quantity of gin mixed with soda pop while watching a basketball game at a friend's house. (Plaintiffs' Statement of Undisputed Facts ("Plaintiffs' Statement") at 1; Defendant's Statement at 4.) [2] After leaving his friend's house, Roger stopped at the church where his mother and father were helping with a banquet. Roger's mother detected the odor of alcohol on Roger's breath and asked Mr. Bevans to take Roger home. (Plaintiffs' Statement at 1.) The parties disagree about whether Roger was intoxicated and whether he had been grounded or other-

---

1. Defendant Mid–America Pension Plan was dismissed from this action pursuant to stipulation by the parties.

2. At the time of the incident, Roger was 17 years old, approximately 5'9″ tall, and weighed 140–150 lbs. (Plaintiffs' Statement at 1.)

wise punished by his mother before being taken home. (Plaintiffs' Statement at 1; Defendant's Response to Plaintiffs' Statement of Undisputed Facts ("Defendant's Response") at 2.)

Once home, Roger exercised on a treadmill and took 3–4 500 mg Tylenol tablets. (Defendant's Response at 2; Plaintiffs' Statement at 1.) After already having taken the 3–4 Tylenol tablets, Roger then consumed an unknown large quantity of 500 mg Tylenol tablets.[3] (Plaintiffs' Statement at 2.) Plaintiffs contend that Roger took the Tylenol in an attempt to cure a headache, while the Plan cites medical reports indicating that Roger took the Tylenol out of anger and frustration with his parents. (Plaintiffs' Statement at 2; Defendant's Statement at 3–5.) After becoming ill at school the following day, Roger went home and was later admitted to Trinity Medical Center in Moline, Illinois. (Defendant's Statement at 3–4.) On May 19, 1995, Roger was transferred to the University of Iowa Hospital in Iowa City, Iowa, where he received treatment for the Tylenol overdose and corresponding liver necrosis. (Defendant's Statement at 3.)

Mr. Bevans submitted claims from Roger's treating physicians and hospitals for payment by the Plan. (Defendant's Statement at 5.) The Plan denied all of these claims under the exclusion for charges incurred as a result of self-inflicted injuries. *Id.* This provision provides that no benefits are payable under the Plan for:

> Services and supplies which are for the treatment of any condition caused by war, or any act of war, declared or undeclared, or by participating in a riot or as the result of the commission of a felony or of an intentionally self-inflicted injury.

(Affidavit of Trisha Bevans, Exhibit 5 at 44.) Mr. Bevans appealed the Plan's denials on September 1, 1995. *Id.* On October 19, 1995, the Plan's Appeals Committee upheld the denial of benefits, and this decision was ratified by the Plan's Board of Trustees on October 20, 1995. *Id.* at 6–7. On February 14, 1996, Plaintiffs filed their Complaint in the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, alleging that the Plan's denial violated ERISA by wrongly invoking the exclusion for an intentionally self-inflicted injury in the benefit plan. (Complaint at 4.) The case was removed to this Court on March 27, 1996. (Notice of Removal at 1.)

### Discussion

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in

---

3. The medical reports from Roger's health care providers estimate the number of tablets consumed to be 80–100 and indicate Tylenol levels of "81" more than 12 hours after ingestion. (Defendant's Statement at 3–4.) Plaintiffs contend that the amount of Tylenol consumed was less than 80 tablets, but offer no precise estimate as to the quantity Roger actually consumed. (Plaintiffs' Statement at 2.) However, in his Affidavit, Roger admits that he swallowed "a lot of the Tylenol." (Affidavit of Roger J. Bevans at 2.)

other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### I. *Standard of Review*

■ Plaintiffs bring suit pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, which authorizes a participant or beneficiary of an employee welfare benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan...." 29 U.S.C. § 1132(a)(1)(B). A challenge to a denial of benefits brought under § 1132(a)(1)(B) is to be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Phillips v. Lincoln National Life Ins. Co.,* 978 F.2d 302, 307 (7th Cir.1992), citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1389 (7th Cir.1993). In this case, "Trustees administer the Plan according to its written terms." (Affidavit of Joseph J. Burke at 2.) Defendant further admits that "[t]he Plan does not contain language giving the Trustees discretion to interpret ambiguous Plan provisions." (Defendant's Response to Plaintiffs' Motion for Summary Judgment at 3.) Accordingly, because the Plan is governed by ERISA and does not expressly provide for administrative discretion in construing its terms or making eligibility determinations, the Court is required to review the denial of benefits *de novo. Phillips,* 978 F.2d at 307; *Hickey,* 995 F.2d at 1389; *see also, Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1096 (7th Cir.1994).

### II. *Applicable Law*

■ The threshold inquiry in interpreting the language of written contracts, such as the Plan, is whether or not the contract is ambiguous as a matter of law. *Hickey,* 995 F.2d at 1389. The terms of the ERISA-governed plan are to be construed "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Hammond v. Fidelity and Guaranty Life*

*Ins. Co.,* 965 F.2d 428, 430 (7th Cir.1992). A term within the Plan is ambiguous if "it is subject to reasonable alternative interpretations" or if there is "genuine (meaning substantial) uncertainty, not resolvable by other means" in construing the term. *Hickey,* 995 F.2d at 1389; *Casey,* 32 F.3d at 1096. While terms found to be ambiguous will be strictly construed in favor of the insured, the Court will not "artificially create ambiguity where none exists." *Hammond,* 965 F.2d at 430.

■■ In this case, the exclusionary provision at issue states that no benefits are payable under the Plan for:

> Services and supplies which are for the treatment of any condition caused by war, or any act of war, declared or undeclared, or by participating in a riot or as the result of the commission of a felony or of an *intentionally self-inflicted injury.*

(Affidavit of Trisha Bevans, Exhibit 5 at 44 (emphasis added.)) Although the Plan does not define "intentionally self-inflicted injury" or offer any illustration of the conditions excluded by such term, the absence of an express definition alone does not render the provision ambiguous. The Seventh Circuit has held that an intentionally self-inflicted injury can reasonably be construed as "the natural and probable consequence of an intentional act," without specifically addressing the issue of ambiguity. *Morton v. Smith,* 91 F.3d 867, 872 (7th Cir.1996).

Ambiguity was addressed, however, when a construction excluding "suicide or self-inflicted injury" was interpreted in *Santaella v. Metropolitan Life Ins. Co.,* 1996 WL 167336 at *6 (N.D.Ill. April 5, 1996). The district court determined that when taken together, this language "leads to only one reasonable interpretation: that the intentional component of suicide is to be applied to self-inflicted injury." *Id.* The court found the policy language not ambiguous, concluding that coverage could be denied under the exclusion only where the insured purposefully injured himself or herself. *Id.* Additionally, in *Wickman v. Northwestern National Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990), the First Circuit referred to an exclusion for suicide or intentionally self-inflicted

injury as "plain language" which could not be distorted in an effort to achieve a more sympathetic result. *Accord, Holsinger v. New England Mut. Life Ins. Co.,* 765 F.Supp. 1279, 1281 (E.D.Mich.1991) (finding the language "self-inflicted injury" unambiguous).

The policy at issue here excludes benefits resulting from "intentionally self-inflicted injury," which simplifies the analysis of the district court in *Santaella* and echoes the "plain language" identified in *Wickman* and *Holsinger.* This Court agrees that the exclusion for intentionally self-inflicted injury is not ambiguous. The Plan's denial of benefits pursuant to this exclusion was proper if Roger purposefully engaged in the conduct which caused him injury.

■ Plaintiffs argue that the Court should apply Illinois law in determining whether Defendant properly invoked the Plan exclusion for intentionally self-inflicted injury under the facts of this case. Under the Illinois cases cited, there is a distinction between accidental means and results—if the particular result was unintended, then the injury or death was not intentional. *See Taylor v. John Hancock Mut. Life Ins. Co.,* 11 Ill.2d 227, 142 N.E.2d 5 (1957); *Russell v. Metropolitan Life Ins. Co.,* 108 Ill.App.3d 417, 64 Ill.Dec. 160, 439 N.E.2d 89 (1982); *Marsh v. Metropolitan Life Ins. Co.,* 70 Ill.App.3d 790, 27 Ill.Dec. 158, 388 N.E.2d 1121 (1979). However, ERISA explicitly provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). While there may be exceptions to this general preemption, the Seventh Circuit has held that state laws governing insurance policy interpretation are not preserved under ERISA. *Hammond,* 965 F.2d at 430.

> ERISA's legislative history, discussed in a plethora of ERISA preemption cases, undeniably demonstrates that Congress expects uniformity of decisions under ERISA. That expectation would almost certainly be defeated were we to preserve 50 different state laws of insurance policy interpretation under the guise of federal common law. We therefore conclude that ERISA preempts state decisional rules, and that any ambiguities in ERISA plans

and insurance policies should be resolved by referring to the federal common law rules of contract interpretation.

*Id.* (internal citations omitted.)

■ When fashioning federal common law in an area not addressed by ERISA, a court may look to state law for guidance if the state law is consistent with the policies underlying ERISA. *Phillips,* 978 F.2d at 311; *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993). However, this is not an issue which has not been addressed by the developing body of federal common law. The Court is satisfied that federal common law has developed sufficiently to address the issue in this case, rendering Plaintiffs' argument for reliance on Illinois law unpersuasive.

■ In *Wickman,* which is often cited as the primary embodiment of federal common law in the area of accidental death benefits, the First Circuit rejected the state law distinction between accidental means and results, focusing instead on the reasonableness of the insured's expectations. 908 F.2d at 1086. In that case, the court determined that the insured either subjectively expected or reasonably should have expected that some serious injury would occur as a result of his intentional conduct and upheld the denial of benefits. *Id.* at 1089. More specifically, federal district courts have found that in order to determine whether the exclusion for intentionally self-inflicted injury applies to the facts of a case involving the ingestion of drugs, the Court should examine four factors: (1) Was the ingestion intentional? (2) Did the insured know that the ingestion would be likely to cause an injury? (3) Did the ingestion cause an injury? (4) Did the loss result from the injury? *Holsinger,* 765 F.Supp. at 1282; *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 178 (D.N.J. 1993); *Klei v. Metropolitan Life Ins. Co.,* 1992 WL 695749 at *8 (E.D.Mich. October 30, 1992). If the case poses no genuine issue of material fact regarding the answers to any of these questions, summary judgment is appropriate. *Holsinger,* 765 F.Supp. at 1282.

■ Although when construed in the light most favorable to Plaintiffs, this case

appears to present several disputed issues of fact, upon closer inspection the Court finds that the facts crucial to the inquiry set forth in *Holsinger* are not in material dispute.[4] After already having taken more than a standard dosage of Tylenol, Roger "picked up the Tylenol bottle," "tipped the bottle back," and "put it up to [his] mouth to take some more." (Affidavit of Roger Bevans at 2; Second Affidavit of Roger J. Bevans at 2.) Although Roger may have numerically consumed more Tylenol than intended, his admitted actions in tipping the bottle to his mouth, receiving "a lot" of tablets into his mouth, and swallowing the large number of tablets demonstrate that his conduct in material respects was intentional and purposeful. *Id.* The Court therefore concludes that Roger purposefully ingested the Tylenol.

Second, in determining whether Roger knew that injury could result from his conduct, the district court in *Holsinger* held:

> [I]t is not necessary that the person ingesting the drugs know that death could result. If the person ingesting the drugs has a general cognizance that the drugs could produce some injury, it is enough that there is some causal relation between the injury caused and the ultimate loss.

*Holsinger,* 765 F.Supp. at 1282; *see also, Klei,* 1992 WL 695749 at *8. While Roger may not have specifically known at the time of ingestion that Tylenol taken in combination with alcohol would have a toxic effect on his liver, a reasonable person in his position

should have known that taking a large quantity of any pain killer is dangerous and could naturally cause some form of injury. Recommended and maximum daily dosages are commonly displayed on bottle labels. Roger swallowed "a lot" of tablets, which could not have been an easy task.[5] The suggestion that Roger could swallow a large number of Tylenol tablets without realizing what he was doing is not reasonable.

Although Plaintiffs contend, and the medical reports provide additional support, that Roger didn't think that he would die from the Tylenol overdose, the same reports also indicate that he was "vaguely aware that he might die." (Appendix in Support of Defendant's Statement of Undisputed Facts, Tab 3, page 9.) Additionally, the fact that he attempted to self-induce vomiting a "couple of minutes later" indicates that he had some awareness of the potential severity of his actions. (Affidavit of Roger J. Bevans at 3.) Therefore, any claim that Roger, or any other average seventeen year old, could take a large quantity of 500 mg Tylenol tablets without any recognition or expectation that it could cause him some form of harm is simply unreasonable.

It is undisputed that the Tylenol overdose caused serious damage to Roger's liver, for which he received extensive treatment and that the Bevans family's claim for benefits resulted from costs incurred during the treatment of this injury. Thus, under the four-factor test set forth in *Holsinger,* the

---

4.  The record before the Plan trustees consisted of medical reports from Roger's treating physicians and hospitals. These reports consistently indicate that Roger had taken the Tylenol out of anger and frustration. The Court assumes that this information was provided to the health care providers by Roger himself, as there is nothing in the record to the contrary, and that is how such information is normally obtained. With their Motion for Summary Judgment, Plaintiffs submit affidavits which attempt to counter this evidence by stating that Roger was only trying to cure a headache and had not been grounded.

    Medical personnel are trained to take patient histories, and the need for accuracy in performing this function is obvious. Although Plaintiffs point out some chronological inaccuracies in these medical reports, they fail to offer a reasonable explanation for how or why several different physicians or other medical personnel would fabricate the circumstances surrounding his over-

    dose. Additionally, although Roger states that he "was in bad shape" and does not remember talking to the doctors, this does not constitute a denial. (Second Affidavit of Roger J. Bevans at 2–3.) Since Plaintiffs' contrary assertions were not before the Plan trustees, are otherwise unsupported by evidence in the record, and are not material to the Court's inquiry, these assertions will not be considered by the Court. *See, Casey,* 32 F.3d at 1099 (finding that a district court has discretion to either limit the evidence to the record before the plan administrator or consider additional evidence if necessary to make an informed judgment.)

5.  While Roger states that he did not gag or have to chew the tablets in order to swallow them, he does not indicate drinking anything to help him swallow the tablets or how many times he had to swallow to get the tablets down.

essential facts of this case fall within the Plan exclusion for intentionally self-inflicted injury.

The Court is not unsympathetic to the Bevans family's situation. As any parent well knows, teenagers frequently do unwise things and exercise bad judgment due to their lack of maturity, to say nothing of the physiological changes going on and the tempestuous emotional and psychological factors at work in a teenager's life. However, the Court's sympathy cannot change the terms of the insurance policy at issue or federal law in order to achieve a more compassionate result. Finding no genuine issue of fact material to the inquiry in this case, the Court finds that summary judgment is appropriately granted in favor of the Plan.

### Conclusion

For the reasons set forth herein, the Court finds that the Plan's denial of benefits was appropriate. Accordingly, Plaintiffs' Motion for Summary Judgment [#12] is DENIED and Defendant's Motion for Summary Judgment [#15] is GRANTED. This matter is now terminated.