**Margaret GUIN, Plaintiff,**

v.

**FORTIS BENEFITS INSURANCE CO., Defendant.**

No. 1:01–CV–583.

United States District Court,
E.D. Texas,
Beaumont Division.

June 25, 2002.

John H. Seale of Seale, Stover, Bisbey & Morian, Jasper, TX, for Plaintiffs.

George Plato Pappas of Sheehy, Serpe & Ware, Houston, TX, Joshua Bachrach, of Rawle & Henderson, Philadelphia, PA, for Defendants.

*MEMORANDUM RE: MOTION FOR
SUMMARY JUDGMENT*

HINES, United States Magistrate
Judge.

By separate order, the court has granted defendant's motion for summary judgment. This memorandum states the court's reasons.

### I. Nature of Suit

This action seeks to recover $63,000.00 accidental death and dismemberment insurance benefits allegedly due under an insurance policy. The action further seeks to recover an additional $11,300 as a statutory penalty under Section 6 of Article 21.55 of the Texas Insurance Code, together with interest and attorney's fees.

Suit was initiated in the District Court of Jasper County, Texas, on July 18, 2001. The defendant removed the action to federal court on August 23, 2001, invoking federal subject-matter jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

### II. Parties

Plaintiff is Margaret Guin ("Mrs.Guin"), a resident of Jasper County, Texas. Mrs. Guin is the widow of Homer Jackson Guin, Jr. ("Homer Guin").

Defendant, Fortis Benefits Insurance Company ("Fortis"), is an insurance company authorized to do business in the state of Texas. Fortis both issued and administered a group term life insurance policy described in the next section.

### III. Factual Background

Homer Guin was employed by Grey Star Corporation as an off-shore worker. In that capacity, he received life insurance coverage under a policy issued by Fortis to Grey Star Corporation. The policy provided life insurance in the amount of $63,000, and a double indemnity for accidental death.

Homer Guin sustained an injury while on the job in July, 1999. He told his doctor that he "jerked his back." His treating physician, Dr. Ronald Corley, M.D., diagnosed the injury as a pulled muscle. Dr. Corley prescribed physical therapy and medication. Pharmacy records reflect that Homer Guin possessed prescriptions for Hydrocodone from Dr. Corley and another physician,[2] and prescriptions for Claratin, Naproxen and Carisprodol [Soma].[3]

Less than two months after his injury, Homer Guin died. Both his death certificate and his autopsy report indicated that his death was accidental in manner. However, the death certificate further stated the cause of death as "drug overdose" and "diazepam, nordiazepam and hydrocodone toxicity." The autopsy report also stated the cause of death was "Diazepam, nordiazepam and hydrocodone toxicity; synergistic reaction." The autopsy report further revealed "an old needle puncture wound of the medial left antecubital space, which when incised, had hemorrhage present in the area." Finally, the post-mortem toxicology report indicated that Homer Guin's urine was positive for Benzodiazepines, THC metabolite and Opiates, Oxycodone, Nordiazepam and Diazepam [Valium].

### IV. Claim for Insurance Benefits

Mrs. Guin made a timely claim for benefits under the group policy that Fortis had

---

1. 29 U.S.C. § 1001 *et seq.*

2. Dr. Gilliland; Dr. Gilliland is not identified as to a specialty or how he came to treat Homer Guin.

3. A Dr. Shockey prescribed the Claratin. Dr. Shockey is not identified as to a specialty or how he came to treat Homer Guin. Dr. Corley prescribed the Naproxen and Carisprodol. It is not clear whether these three prescriptions were prescribed for Homer Guin's work-related injury.

**546**

issued to Grey Star Corporation. Fortis, as administrator, paid Mrs. Guin's claim for ordinary life insurance. However, it denied her double indemnity claim for benefits due in the event of accidental death. In so doing, Fortis relied on medical records, prescription drug records, death certificate, autopsy report and a report from Dr. Polly M. Galbraith, M.D., who noted that toxicology screens were negative for medications prescribed for Homer Guin, but positive for non-prescribed medications, including Diazepam (Valium) and Oxycodone. Moreover, Dr. Galbraith observed that the levels of Diazepam were elevated much above what a physician normally would prescribe. Dr. Galbraith concluded that Homer Guin died of a "drug overdose and synergistic reaction of diazepam, its metabolite [nordiazepam] and oxycodone." She also stated that "[c]onsideration may be made for the possibility of recreational drug injection of oxycodone and diazepam."

Fortis's denial of accidental death benefits was based on Fortis's conclusion that the group policy itself expressly excluded coverage for any death caused by intentionally self-inflicted injuries and/or by the use of any drug unless as prescribed by a doctor.

Mrs. Guin appealed the denial, but her appeal was denied. Thereafter, Mrs. Guin instituted the instant suit.

## V. Motion for Summary Judgment

Fortis moves for summary judgment on two separate but interrelated grounds. First, the denial of Mrs. Guin's claim for accidental death benefits was not arbitrary and capricious because it was based on the policy exclusion that precludes such benefits when death is caused by intentionally self-inflicted injuries and/or caused by the use of any drug, unless used as prescribed by a doctor. Second, Fortis asserts that uncontroverted evidence establishes that the death of Homer Guin was the result of

a drug overdose, and under caselaw, a drug overdose is not an "accident."

Fortis's motion for summary judgment was filed on January 15, 2002. Mrs. Guin has filed no response in opposition.

## VI. Analysis and Discussion

### A. *Effect of Plaintiff's Failure to Respond*

█ Local rules of court provide that if a party opposes a motion, the party is required to file a response, brief and supporting documents within fifteen days after service of the motion. Loc. R. Civ. P. 7(d)-(e). If the non-moving party fails to oppose a motion in the manner set forth in the local rules, the court may and should assume that the party has no opposition. *Guilbeaux v. 3927 Foundation, Inc.*, 177 F.R.D. 387, 389 (E.D.Tex.1998)(Schell, C.J.).

The court may not grant summary judgment, however, for the sole reason that the party against whom it is directed fails to file an appropriate opposition. *John v. State of Louisiana (Bd. of Tr. for State Coll. and Univ.)*, 757 F.2d 698, 708 (5th Cir.1985); *see also Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir.2001). Rather, the court may grant summary judgment only if the motion itself demonstrates both the absence of genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

### B. *ERISA Generally*

█ ERISA regulates employee welfare benefit plans that "through the purchase of insurance or otherwise," provides care or benefits in the event of sickness, accident, disability, or death. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). As a method of insuring uniform enforcement among the fifty states, Congress provided

a preemption of all state laws that relate to employee benefit plans. In addition, one of ERISA's objectives is furthered by conferring upon participants and beneficiaries of employee benefit plans the right of a private cause of action to recover benefits due under the plan and to enforce or clarify rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). Such actions, in effect, require judicial review of employee benefit plans' determinations.

## C. Scope of Judicial Review

### 1. Effect of Administrator's Discretionary Authority

■ ERISA in and of itself does not specify or provide guidance with regard to the standard of review to be employed by the federal courts. In *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court articulated the standard of review to be applied by federal courts. 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court held that "denial of benefits challenged under § 1132(a)(1)(B) generally is to be reviewed under a *de novo* standard." *Id.* at 115, 109 S.Ct. 948. However, when the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision is reviewed under an "abuse of discretion" or "arbitrary and capricious" standard. *Id.* Thus, "when the plan administrator is vested with discretionary authority to construe the terms of the plan and determine eligibility for benefits ... the decisions of the plan administrator can

only be reversed if found to be arbitrary and capricious." *Switzer v. Wal–Mart Stores, Inc.,* 52 F.3d 1294, 1298 (5th Cir. 1995).[4]

### 2. Arbitrary and Capricious Standard

■ "Arbitrary and capricious" means that federal courts owe due deference to the administrator's factual conclusions which reflect reasonable and impartial judgment. *Southern Farm Bureau Life Ins. Co. v. Moore,* 993 F.2d 98, 101 (5th Cir.1993); *Pierre v. Connecticut General Life Ins. Co./Life Ins. Co. of North America,* 932 F.2d 1552, 1562 (5th Cir.1991) ("[F]or factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard; that is, federal courts owe due deference to an administration's factual conclusions that reflect a reasonable and impartial judgment.").

■■ "The touchstone of 'arbitrary and capricious' conduct is unreasonableness. Our inquiry is not whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Barnett v. Kaiser Foundation Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994).[5] "[A] decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan's terms and made in good faith." 2 Ronald J. Cooke, ERISA Practice and Procedure § 8:14 (2d ed.1995). "The standard exists to ensure that administrative responsibility rests with those whose experience is daily

---

4. In this circuit, the terms "abuse of discretion" and "arbitrary and capricious" are used interchangeably. *Matassarin v. Lynch,* 174 F.3d 549, 563 (5th Cir.1999) ("The 'arbitrary and capricious' review amounts to an abuse-of-discretion standard."); *McDonald v. Provident Indemnity Life Ins. Co.,* 60 F.3d 234, 236 n. 11 (5th Cir.1995).

5. In cases involving interpretation of a plan, the abuse of discretion analysis can involve a two-step process. "First, a court must determine the legally correct interpretation of the plan ... [i]f the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion." *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir.1992).

and continual, not with the judges whose exposure is episodic and occasional." *Murphy v. Wal–Mart Associates' Group Health Plan,* 928 F.Supp. 700, 705–06 (E.D.Tex.1996).

When reviewing an administrator's decision, a court is to focus on "whether the record adequately supports the administrator's decision." *Vega v. National Life Ins. Servs., Inc.,* 188 F.3d 287, 298 (5th Cir.1999). However, this does not require a showing that the administrator reasonably investigated a claim, even in cases where the administrator has a potentially conflicted interest. *Id.* The administrator "has no duty to contemplate arguments that *could* be made by the claimant." *Id.* at 299 (emphasis added). Further, the administrator's decision is "to be based on evidence, even if disputable, that clearly supports the basis for its denial" and the administrator "has the obligation to identify the evidence in the administrative record...." *Id.* "[T]he claimant may then contest whether that record is complete." *Id.* A decision by the administrator is not arbitrary and capricious if the decision is "supported by substantial evidence and is not erroneous as a matter of law...." *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir. 1992).

3. Less Deference to Self–Interested Administrators

When an employer contracts with a third party that both insures and administers the plan, the amount of deference given to the administrator's decision can be constricted. The Fifth Circuit recognizes such situations present a conflict of interest because the plan administrator can be self-interested, in that the administrator potentially benefits from every denied claim. *Vega,* at 295. As a result, the Fifth Circuit uses a "sliding scale" approach where the abuse of discretion standard is used, but less deference is given to the administrator in proportion to the administrator's apparent conflict, and courts are "less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision." *Id.* at 296–99. When there is an apparent conflict of interest, the scale (amount of deference granted to the administrator) "slides," depending upon the amount of evidence of conflict on the part of the administrator. *Id.* at 301. The scale slides from the heavily conflicted administrator whose decision would be reviewed with very little deference, down to the minimally conflicted administrator whose decision would be reviewed with only a "modicum less deference." *Id.* at 297–301.

D. *Application*

Homer Guin's group policy is an employee welfare benefit plan that provides employees of Grey Star Corporation with life and accidental death and dismemberment insurance benefits. Accordingly, the policy is governed by the Employee Retirement Income Security Act of 1974.

The group policy provides Fortis with "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Policy." Def.'s Mot. Summ. J. and Br. at FBIC 29. As a result, Fortis's decision is reviewed under the "abuse of discretion" or "arbitrary and capricious" standard as described above. However, Fortis both insures and administers the policy. Therefore, the amount of deference given to the potentially conflicted administrator's decision may be constricted if there is evidence with respect to the degree of conflict. *Vega,* 188 F.3d at 295. In this case, outside of the fact that Fortis both insures and administers the policy (i.e. the minimal basis for conflict), there is no

evidence with respect to the degree of conflict, namely, Fortis benefitting from denying the claim. As a result, Fortis's decision will be reviewed with only a "modicum less deference" than the court would normally afford.

It was not arbitrary or capricious—even when viewed with a modicum less deference—for Fortis to deny the claim in question under an explicit policy exclusion. Under the "Exclusions" provision in the policy, Fortis was not liable for benefits "if the loss results directly or indirectly from ... the use of any drug, unless you use it as prescribed by a doctor...."

█ Fortis was presented with evidence in the form of the death certificate, autopsy, medical reports and prescription drug records. The death certificate and autopsy both indicated death was caused by diazepam, nordiazepam and hydrocodone toxicity, the death certificate further stating the cause of death as a drug overdose. Dr. Galbraith's memorandum disputed the presence of hydrocodone and noted that the toxicology report instead indicated the presence of oxycodone. Nevertheless, Dr. Galbraith agreed that Homer Guin died of a drug overdose. Further, Dr. Galbraith noted that the level of diazepam was significantly elevated and thus not taken in a therapeutic dosage as it would have been prescribed. Moreover, the evidence of a needle puncture in the antecubital space of Homer Guin's left arm appears to have caused Dr. Galbraith to suggest the possibility of recreational drug injection of oxycodone and diazepam. Finally, the prescription drug records indicated that diazepam and oxycodone were not prescribed to Homer Guin.

Fortis's unopposed proof shows that their decision to deny accidental death and dismemberment insurance benefits to Guin was not an abuse of discretion or arbitrary and capricious, even when reviewed with a modicum less deference, given the terms of the policy. Taking note that Guin has filed no opposition, the record does not reflect genuine issues of material fact regarding whether Fortis abused its discretion in denying Guin accidental death and dismemberment insurance benefits. Fortis is entitled to summary judgment as a matter of law.[6]

---

**6.** Given that summary judgment is granted on the basis of the terms of the group policy, it is unnecessary for this court to address Fortis' contention that a drug overdose is not considered an "accident" under caselaw. A brief review of the caselaw suggests that whether a drug overdose is or is not considered an "accident" is dependent on the terms of an employee welfare benefit plan and the forum state's laws. *Patch v. Metropolitan Life Ins. Co.,* 733 F.2d 302 (4th Cir.1984); *Bevans v. Iron Worker's Tri–State Welfare Plan,* 971 F.Supp. 357 (C.D.Ill.1997); *McLain v. Metropolitan Life Ins. Co.* 820 F.Supp. 169 (D.N.J. 1993). *But see Santaella v. Metropolitan Life Ins. Co.,* 123 F.3d 456 (7th Cir.1997); *O'Toole v. New York Life Ins. Co.,* 671 F.2d 913 (5th Cir.1982).