IDA ANNE CARROTHERS, Plaintiff-Appellant, v. KNIGHTS OF COLUMBUS, Defendant-Appellee.

(No. 56025;

First District (4th Division)—March 14, 1973.

Coghlan and Joyce, of Chicago, (George J. Murtaugh, Jr., of counsel,) for appellant.

Alex Devience, Jr., of Chicago, for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

This action was commenced by Ida Anne Carrothers to recover benefits payable under the terms of a policy of life insurance issued to her deceased husband by the defendant, Knights of Columbus.

On March 1, 1967, the plaintiff filed her complaint in the Circuit Court of Cook County, and on April 7, 1967, the defendant filed its answer. On April 24, 1970, the defendant moved for judgment on the pleadings, which was denied. The cause came on for trial on July 1, 1970. At the close of the plaintiff's evidence the defendant moved for a judgment in its favor. The trial court granted this motion and entered judgment accordingly. On July 24, 1970, the plaintiff filed a post-trial motion requesting that this judgment be vacated. On November 4, 1970, the court granted the post-trial motion, vacated the judgment previously entered and entered judgment for the plaintiff. On November 24, 1970, the defendant filed a motion to vacate the judgment entered on November 4. This motion was granted and the cause was set for the presentation of the defendant's evidence. After hearing the defendant's evidence, the court on February 26, 1971, entered judgment for the defendant, and the plaintiff brought this appeal. On appeal, she contends that the judgment for the defendant was contrary to law and against the manifest weight of the evidence.

The pertinent facts may be summarized as follows. On May 21, 1956, Fred J. Carrothers, the deceased, joined the Knights of Columbus, a fraternal organization carried on for the mutual benefit of its members. Mr. Carrothers paid an initial premium of $41 and continued to pay

monthly premiums of $41, in return for which he received a policy of life insurance. Under the terms of this policy, the Knights of Columbus agreed, among other things, to pay the sum of $10,000 upon receipt of proof of the death of the insured as a result of bodily injuries effected "directly and independently of all other causes through external, violent and accidental means within ninety days from the date of the accident which shall have caused such injuries  *  *  *." Excluded from coverage was death resulting from a number of enumerated causes, among which were "injury intentionally inflicted by another person"; "committing an assault or felony" and "disease or infirmity of mind or body".

On December 18, 1965, while this policy was in effect, Mr. Carrothers made a trip to a shopping center on the south side of Chicago. While there he became involved in an altercation with Thomas Ridgeway, another motorist, who accused Mr. Carrothers of taking his parking space. Ridgeway dragged Mr. Carrothers from his automobile, struck him twice and slashed him on the face with a pocket knife. Police officers summoned to the scene placed Mr. Carrothers in a squadrol for transportation to a hospital, but he collapsed enroute and was pronounced dead at the hospital approximately 50 minutes after the incident. The Cook County Coroner's office performed an autopsy and stated the cause of death as an "acute myocardial infarction."

In the trial court it was the plaintiff's theory that the altercation in the parking lot was the direct and proximate cause of the myocardial infarction which ultimately led to Mr. Carrothers' death, and therefore that the death was accidental within the meaning of the policy.

Mrs. Carrothers, the plaintiff, testified that her husband was in good health on the day of his death and that he went to work that morning. He had not missed any days of work during the previous year because of illness. She further testified that her husband had been seeing a "weight doctor" prior to his death and was on a diet, but had never seen a doctor in connection with any heart difficulty.

Dr. Eugene Tapin, the coroner's pathologist, testified that he found congestion in the deceased's lungs, a condition which occurs in cases of heart failure. Upon examination of the deceased's heart, Dr. Tapin found that:

> "The main branch of the heart was moderately mildly hardened by deposition of calcium and cholesterol, which is fat; [t]hat the origin of the coronary arteries was narrow to a pinpoint, and the heart per se was found to have an infarct, an extension of an infarct of recent origin, and the coronary arteries that feed the muscle of the heart were very narrow to a measuring of one to

two millimeters, the wall was very thick and, again, thickened by calcium and deposition of fats, which is called cholesterol."

Based upon these observations Dr. Tapin diagnosed the cause of death as "acute myocardial infarction". Dr. Tapin further testified that in his opinion an infarction occurs when "the heart rate demands the muscle for more oxygen and the pipes that fit the muscle, they don't have body enough to bring that blood, oxygenated, to the heart, and the heart succumbs, dies.", and that such an increased demand for oxygen could be caused by "anxiety [or] altercation".

The doctor was asked if, based upon his knowledge of the events which transpired in the parking lot and his examination of the deceased, he had an opinion as to whether there was a causal connection between the altercation and Mr. Carrothers' subsequent death, and he stated that "there was a connection between the altercation * * *."

In its answer the defendant raised the exclusionary clause as an affirmative defense, asserting by implication that Mr. Carrothers' death resulted directly or indirectly from "(b) injury intentionally inflicted by another person; * * * (d) committing an assault or felony * * * or (f) disease or infirmity of mind or body * * *." In its memorandum in support of the November 24, 1970, motion to vacate the judgment for plaintiff the defendant raised provisions (b) and (f) of the exclusionary clause, apparently abandoning any defense based upon provision (d). The trial court specifically found that:

> "[t]he rider dated May 21, 1956, entitled 'Accidental Means Death Benefit as Limited and Defined Herein' does not affirmatively provide a benefit for the assured decedent's death and specifically excludes such death by virtue of proviso (f)."

On appeal the defendant argues that there is ample evidence in the record to support the trial court's finding and hence it should not be disturbed by this court. The defendant's evidence consisted primarily of the testimony of Dr. James Cassidy, who testified as an expert witness. In response to a hypothetical question which included a history of the events in the parking lot and the findings of the coroner's pathologist, Dr. Cassidy stated it to be his opinion that Mr. Carrothers died as a result of "the recent myocardial infarction" and that the infarction had occurred some 18 to 24 hours prior to death, or well before the incident in the parking lot. The latter opinion was based upon Dr. Cassidy's belief that the infarction would not have been visible to the naked eye, and hence could not have been seen by Dr. Tapin, the pathologist, until 18 to 24 hours after it had occurred. Dr. Cassidy also testified that an acute myocardial infarction is nearly always fatal. On cross-examination

Dr. Cassidy adhered to his opinion that the infarction which caused Mr. Carrothers' death occurred prior to the altercation, but did state that the altercation probably would have increased the rate of Mr. Carrothers' heart beat and hence his heart's need for oxygenated blood.

■■ We are mindful of the standard to be followed by this court in reviewing the findings of the trial court. (See *Brown v. Zimmerman*, 18 Ill.2d 94; *Mortell v. Beckman*, 16 Ill.2d 209.) However, after considering the record it is our conclusion that the findings, and consequently the judgment entered upon them, are against the manifest weight of the evidence. The court found that:

> "the insured decedent Fred J. Carrothers met his death from acute myocardial infarction brought about by stenosing arteriosclerosis. This infarction occurred some time prior to the altercation during which the insured decedent was knifed, and the decedent thereafter met his death by natural causes."

■■ This finding is apparently based upon the testimony of Dr. Cassidy that in order for the infarct to have been visible to the pathologist it must have occurred 18 to 24 hours prior to death. The inference which arises from this testimony is that at the time of the incident in the parking lot Mr. Carrothers had already suffered the acute myocardial infarction. His death within a short period of time was inevitable, and it is pure coincidence that it occurred 50 minutes after the altercation. In our opinion, the totality of the evidence does not support this conclusion. It was undisputed that Mr. Carrothers experienced no pain or distress prior to the altercation. He went to work that morning and later drove his car to the shopping center. Dr. Tapin testified that in his medical opinion there was a connection between the altercation and Mr. Carrothers' death. He further testified that a person in Mr. Carrothers' condition could live "for years" if not placed under stress. Even Dr. Cassidy admitted that there was no way that he could tell whether or not the infarction resulted from the altercation. We believe, therefore, that the manifest weight of the evidence supports the plaintiff's thory that Mr. Carrothers died as the proximate result of the fight in the parking lot, and we so hold.

■■ The court made no findings in its final judgment order as to the defendant's contention that Mr. Carrothers' death was excluded from coverage under provision (b) of the policy rider in that it resulted from injuries intentionally inflicted by another person. As the defendant raises this point in its brief, we will consider it briefly. Our courts have held on several occasions that if in the act preceding the injury which causes death, though intentional, something unforeseen or unexpected occurs which produces the injury, the death is accidentally caused. (*Higgins v.*

*Midland Casualty Co.,* 281 Ill. 431; *White v. Penn Mutual Life Insurance Co.,* 272 Ill.App. 277; *Wylie v. Union Casualty and Life Insurance Co.,* 15 Ill.App.2d 448.) In the present case there is no evidence that Ridgeway intended to inflict a fatal injury upon Mr. Carrothers or that he could have foreseen that the stress and activity engendered by the altercation would result in a fatal heart attack.

For the foregoing reasons the judgment is reversed and the cause remanded to the trial court with instructions to enter judgment for the plaintiff.

Reversed and remanded with directions.

ADESKO and DIERINGER, JJ., concur.