*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0330P (6th Cir.)
File Name: 04a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOLORES K. JONES,
　　　　*Plaintiff-Appellant,*

　　　　*v.*

METROPOLITAN LIFE
INSURANCE COMPANY,
GENERAL MOTORS, and
GENERAL MOTORS LIFE AND
DISABILITY BENEFITS
PROGRAM,
　　　　*Defendants-Appellees.*

No. 03-1375

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-70704—George C. Steeh, District Judge.

Argued: August 13, 2004

Decided and Filed: September 29, 2004

Before: MOORE and COLE, Circuit Judges; MARBLEY,
District Judge.*

---

　* The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Barbara H. Goldman, SHELDON L. MILLER &
ASSOC., Southfield, Michigan, for Appellant. Mark D.
Filak, HARDY, LEWIS & PAGE, Birmingham, Michigan,
for Appellees. **ON BRIEF:** Barbara H. Goldman,
SHELDON L. MILLER & ASSOC., Southfield, Michigan,
for Appellant. Kay R. Butler, David M. Davis, HARDY,
LEWIS & PAGE, Birmingham, Michigan, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. This action
arose from Defendant-Appellee, Metropolitan Life Insurance
Company ("MetLife")'s, denial of Plaintiff-Appellant,
Dolores K. Jones ("Jones")'s, claim for benefits under a
Personal Accident Insurance ("PAI") policy in an employee
benefits plan ("Plan") provided by General Motors ("GM")
and governed by the Employee Retirement Income Security
Act of 1974 ("ERISA"). Jones appeals the district court's
judgment granting MetLife's motion for judgment on the
administrative record and denying Jones's dispositive motion.
Jones first asserts on appeal that the district court should have
evaluated under a modified-arbitrary-and-capricious standard
the denial of PAI benefits to Jones because MetLife was
operating under a conflict of interest, as it was both the
insurer and an administrator of the Plan. Jones next asserts on
appeal that the district court erred by accepting MetLife's
definition of the term "accident," which requires a claimant to
demonstrate "unusual activity" or an "external force or
event." Jones argues that MetLife's definition is arbitrary and
capricious, and that the district court should have applied the
federal-common-law definition of accident promulgated by
the First Circuit in *Wickman v. Northwestern National*

*Insurance Co.*, 908 F.2d 1077, 1088 (1st Cir.), *cert. denied*, 498 U.S. 1013 (1990), which merely requires the claimant to demonstrate that the injury was neither subjectively expected nor objectively foreseeable.

For the following reasons, we **REVERSE** the district court's judgment granting MetLife's motion for judgment on the administrative record and **REMAND** this case to the district court with instructions to remand this claim to MetLife for reconsideration of Jones's medical evidence in light of this opinion.

## I.  BACKGROUND

### A.  Relevant Plan Provisions

This action arose from MetLife's denial of Jones's claim for PAI benefits under a Plan provided by GM and insured by MetLife. The parties agree as to which provisions of the Plan are relevant to this appeal. First, the parties agree that, through the following provision, GM has expressly reserved and delegated to MetLife discretionary authority to interpret the Plan and to evaluate claims under the Plan:

(b)  Administration *and Amendment*

(1)  The Corporation, as the Program Administrator, shall be responsible for the administration of the Program. The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other committee *or individual* expressly authorized by the Board to take such action. . . . The Program Administrator expressly reserves the right to construe, interpret and apply the terms of this Program.   In carrying out its responsibilities under the Program, the Carrier also shall have discretionary authority to

interpret the terms of the Program and to determine eligibility for and entitlement to Program benefits in accordance with the terms of the Program.    Any interpretation or determination made by the Program Administrator or the Carrier, pursuant to such discretionary authority, shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.    The determination of the Corporation or, in the event of an appeal, of the Carrier, shall be final and binding on the Corporation, the insurance company and the Employee or the Employee's designated beneficiary.

Joint Appendix ("J.A.") at 268 (GM Plan). The parties also agree that the above-quoted provision requires that courts give some deference to MetLife's interpretation of the Plan and evaluation of claims under the plan, and therefore, that this court should evaluate MetLife's denial of benefits under some permutation of the arbitrary-and-capricious standard. The parties disagree, however, over whether the denial of benefits should be evaluated under a less deferential, modified-arbitrary-and-capricious standard because MetLife was operating under a conflict of interest, as it was both the insurer and an administrator of the Plan.

Second, the parties agree that Jones's claim for PAI benefits must be determined under the following provision:

(i)  Payment of Benefits

If, while insured for Personal Accident Insurance, an Employee, Spouse or Dependent Child sustains accidental bodily injuries, and within one year thereafter shall have suffered loss of life or any other loss set forth in subsection (e), as a direct result of such bodily injuries independently of all other

causes, the Carrier shall pay the benefit specified for all such Losses. . . .

. . .

Only one amount, the largest to which the beneficiary is entitled, will be paid for all losses suffered by one covered individual resulting from one accident.

J.A. at 333 (GM Plan). The Summary Plan Description provides:

If you become totally and permanently disabled as a result of an accidental injury while you are an active employee you will be paid the full benefit amount of any personal accident insurance (PAI) you elected in monthly installments of 2% of that amount less any amount paid for losses previously sustained, provided you submit evidence satisfactory to the insurance company. "Total and permanent disability" under PAI means the total and permanent inability, as caused by an accidental injury, to engage in regular employment or occupation for remuneration or profit, as based on medical evidence satisfactory to the insurance company.

J.A. at 88 (GM Summ. Plan Description). The parties agree that Jones's claim for PAI benefits turns upon the definition of the term "accident," and that the term "accident" is not defined in the Plan or the Summary Plan Description. The parties disagree, however, over whether the definition proffered by MetLife in the course of denying Jones's claim is arbitrary and capricious.

## B. Factual Background

Jones worked as an industrial nurse for GM. On February 22, 1999, Jones injured her knee at work. On September 1, 2000, Jones submitted to MetLife a claim form

requesting PAI benefits. On that form, Jones described the circumstances leading to her knee injury as follows: "BENDING DOWN AND SQUATTING TO GIVE FIRST AID TO EMPLOYEE – FELT SHARP PAIN IN MY RIGHT KNEE IMMEDIATELY AFTER I STOOD FROM SQUATTING POSITION." J.A. at 60 (claim form). Also on that form, Jones indicated that she became disabled on June 1, 1999, and was certified unable to work on May 31, 2000.[1]

On December 5, 2000, MetLife wrote to Jones informing her that her claim for PAI benefits had been denied because Jones's description of her knee injury "does not constitute an accident for purposes of the payment of Total and Permanent Disability Benefits under [Jones's] Personal Accident Insurance" and because Jones's "physician has not indicated that [Jones is] totally and permanently disabled due to [her] injury." J.A. at 65 (MetLife letter 12/5/2000). In its December 5, 2000 letter, MetLife stated that it would "gladly consider any additional information you wish to submit supporting your claim. . . . The additional information will be re-evaluated and Metropolitan Life will advise you of its findings." J.A. at 66 (MetLife letter 12/5/2000). On December 19 and 26, 2000, Jones sent to MetLife additional documentation supporting her claim, including a doctor's receipts that indicate her diagnosis was "tear knee medial meniscus," her Social Security award letter for disability insurance, a claim form for PAI benefits that her treating physician, Dr. Salamon, had completed in more detail, and a statement from Jones's physician. J.A. at 87 (Jones letter 12/26/2000).

On February 9, 2001, MetLife wrote to Jones again informing her that her claim for PAI benefits had been denied because "'bending down and squatting', is not sudden, unexpected and unforeseen. Therefore, it does not constitute

---

[1]In its letters, MetLife indicates that both of these events occurred in 1999.

an accident for purposes of the payment of Total and Permanent Disability Benefits under you[r] Personal Accident Insurance." J.A. at 63 (MetLife letter 2/9/2001). In its February 9, 2001 letter, MetLife informed Jones that she could appeal this decision and could include in that appeal "any additional information that [she] wish[ed] to be considered." J.A. at 64 (MetLife letter 2/9/2001).

On April 9, 2001, Jones wrote to MetLife appealing the December 5, 2000 and February 9, 2001 denials of her claim for PAI benefits. In her April 9, 2001 letter, Jones explained that "while in the course of my employment, and in an emergency first aid situation, that while I bent down to a squatting position in order to administer first aid that *I hypo extended my knee causing a rip and tear to the medial meniscus*"[2] and stated that Taber's Cyclopedic Medical Dictionary defines "accident injury" as "'[o]ccuring suddenly, unexpectedly, inadvertently; under unforeseen circumstances.'" J.A. at 67 (Jones letter 4/9/2001) (emphasis added). Jones further stated in her April 9, 2001 letter that she felt "that an unexpected tear in the medial meniscus received during the course of performing [her] job clearly constitutes an accident. . . . [and that] MIOSHA[3] deems [her] injury an accident." J.A. at 67-68. In her April 9, 2001 letter, Jones also requested that MetLife send her a copy of the PAI

---

[2] Based upon the administrative record, it is not clear whether Jones erroneously used the modifier "hypo" instead of "hyper" when describing her knee injury. The medical dictionaries that we consulted did not list a definition for the term "hypo-extension." *Dorland's* defines "hyperextension" as "extreme or excessive extension of a limb or part," defines "hypo" as "a prefix signifying beneath, under, below normal, or deficient," and does not include a definition for the term "hypo-extension." *Dorland's Illustrated Medical Dictionary* 881, 892 (30th ed. 2003); *see also Taber's Cyclopedic Medical Dictionary* (19th ed. 2001). In any event, it is not for us to determine in the first instance whether Jones erroneously described her injury.

[3] Michigan Occupational Safety and Health Administration.

policy and inform her of MetLife's definitions of the terms "accident" and "total and permanent disability" in order to enable Jones to provide MetLife with appropriate documentation of her injury.

On May 7, 2001, MetLife wrote to Jones denying her appeal. In its May 7, 2001 letter, MetLife stated:

> The [PAI] plan itself does not define the word "accident" or "accidental," but applicable federal law does. Under applicable federal law, "accident" means an unforeseen undesigned sudden or unexpected event of an unfortunate character. However, injuries resulting from natural and ordinary activities are not "accidental" when there are no external forces or events to trigger the injuries. For example, a knee injury from bending and/or squatting does not constitute an accident.
>
> In your case, there was no outside occurrence that caused your injury. In the course of your employment as a registered nurse, you bent down and squatted to give first aid to an employee. Consequently, your knee injury was natural and not accidental. (While MIOSHA may have deemed your injury to be an accident, a determination by MIOSHA is not binding on the Plan.)
>
> . . .
>
> . . . Since we have determined that your injury was not accidental, there was no need to closely examine your medical evidence.

J.A. at 69-70 (MetLife letter 5/7/2001).

## C. Procedural Background

On February 22, 2002, Jones filed a complaint in the district court seeking judicial review of MetLife's denial of her claim for PAI benefits. The parties each filed motions for judgment. The district court granted MetLife's motion for

judgment on the administrative record and denied Jones's dispositive motion.  The district court had jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B) and (e), as Jones sought to recover benefits allegedly due under the terms of an ERISA plan.  This court has jurisdiction pursuant to 28 U.S.C. § 1291, as Jones filed a timely notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

The parties agree that when there is no evidence of a conflict of interest, both the district court and this court review de novo an administrator's denial of benefits pursuant to an ERISA plan, unless the plan clearly grants to the administrator discretion to construe the terms of the plan or to make benefit determinations. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  The parties also agree that if a plan expressly grants to the administrator such discretion, and there is no evidence of a conflict of interest, both the district court and this court must review the administrator's denial of benefits under the highly deferential arbitrary-and-capricious standard of review. *Moos v. Square D Co.*, 72 F.3d 39, 41 (6th Cir. 1995).  Moreover, the parties agree that when reviewing an administrator's denial of benefits pursuant to an ERISA plan, both the district court and this court may typically review only evidence contained in the administrative record. *Wilkins*, 150 F.3d at 619.

Jones first asserts on appeal that the district court erred by reviewing under the arbitrary-and-capricious standard the denial of her claim for PAI benefits, arguing that MetLife had a conflict of interest due to its status as both the insurer and an administrator of the Plan.  In response, MetLife argues that Jones has not preserved her argument that the district court should have modified the arbitrary-and-capricious standard, as Jones conceded in the district court that the arbitrary-and-

capricious standard applies and failed to raise in the district court MetLife's alleged conflict of interest.

We conclude that Jones failed to preserve her argument that the district court should have reviewed under a modified-arbitrary-and-capricious standard MetLife's denial her claim for PAI benefits.[4]  Jones conceded below that the denial of her claim for PAI benefits should be evaluated under the arbitrary-and-capricious standard and did not assert below that this standard should be modified due to MetLife's alleged conflict of interest.  In her dispositive motion below, Jones stated, "[Jones] concedes that the case at bar should be reviewed under the arbitrary and capricious standard. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious. . . . In other words, if the decision is 'rational in light of the plan's provisions' it should be upheld."  J.A. at 567 (Pl's Dispositive Mot.) (internal citations omitted).  Additionally, in her response to MetLife's motion for judgment on the administrative record, Jones stated, "[Jones] admits that under the GM Plan, discretionary authority has been retained by [MetLife] and that the standard of review is pursuant to an arbitrary and capricious standard."  J.A. at 583 (Pl's Resp.).  Therefore, we will evaluate under the deferential arbitrary-and-capricious standard of review MetLife's denial of Jones's claim for PAI benefits.

---

[4] Typically, parties may not determine by agreement our standard of review. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996).  It this case, however, the level of deference accorded to MetLife's denial of benefit turns upon a factual circumstance, i.e., whether or not MetLife was operating under a conflict of interest, and parties may concede the existence of facts.  In this case, Jones's concession in the district court that MetLife's denial of her claim for benefits should be reviewed under the arbitrary-and-capricious standard and Jones's failure to assert that MetLife was operating under a conflict of interest are tantamount to a concession of fact, and not to an agreement to waive the appropriate standard of review.

It is true that, "[r]eview under [the arbitrary and capricious] standard is extremely deferential and has been described as the least demanding form of judicial review." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Under this deferential 'arbitrary and capricious' standard, we will uphold a benefit determination if it is 'rational in light of the plan's provisions.'" *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)). The arbitrary-and-capricious standard, however, does not require us merely to rubber stamp the administrator's decision. *McDonald*, 347 F.3d at 172. Under the arbitrary-and-capricious standard, both the district court and this court must exercise review powers. *Id*.

## B. Definition of Accident

Jones next argues on appeal that the district court erred by concluding that MetLife's definition of the term "accident" is not arbitrary or capricious. Jones asserts that the district court should have applied the federal-common-law definition of accident promulgated by the First Circuit in *Wickman*, which merely requires the claimant to demonstrate that the injury was neither subjectively expected nor objectively foreseeable. In response, MetLife argues that the district court properly held that MetLife's definition of the term "accident" is not arbitrary or capricious. MetLife asserts that *Wickman* is distinguishable, in that there the insured's "injuries resulted from an occurrence outside the usual course of events." Appellee's Br. at 32. MetLife argues that several federal cases decided under the arbitrary-and-capricious standard have upheld administrators' interpretation of "accident" as requiring "unusual activity" or an "external force or event."

At the outset, we note that because the Plan expressly granted to MetLife authority to interpret the Plan, we must give deference to MetLife's interpretation of ambiguous and general terms of the Plan. *See Admin. Comm. of the Sea Ray*

*Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 986 (6th Cir. 1999), *cert. denied*, 528 U.S. 1114 (2000); *Moos*, 72 F.3d at 42-43. Discretion to interpret a plan, however, does not include the authority to add eligibility requirements to the plan. *See Univ. Hosps. of Cleveland*, 202 F.3d at 849-50.[5] We conclude that MetLife acted arbitrarily and capriciously when it interpreted the term "accident" in a manner that adds requirements not found in the Plan documents or supported by federal common law.

The Plan documents do not define the term "accident." Specifically, the Plan documents do not require that an insured be engaged in "unusual activity" or meet with an "external force or event" in order for her injury to be considered an accident. MetLife could have expressly included such a requirement. Indeed, many of the insurance policies discussed in the cases cited by the parties did contain such a requirement. Because the policy at issue in this case did not include an "unusual activity" or "external force or event" requirement, MetLife attempts to rely upon federal common law to supply this requirement.

As evidenced by the cases cited in the parties' briefs, the definition of the term "accident" has been heavily litigated throughout history. The cases cited by Jones are of two varieties — (1) those in which the insured had engaged in risky behavior and the question being reviewed was whether the resulting injury was accidental;[6] and (2) those in which an

---

[5] We recognize that in *University Hospitals*, we gave less deference to the administrator's interpretation because the administrator was operating under a conflict of interest. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846-47 (6th Cir. 2000). Nevertheless, we conclude that under even the most deferential review, adding eligibility requirements to a plan *is* arbitrary and capricious.

[6] For examples of this variety of case, see *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1106, 1109-10 (7th Cir. 1998) (holding that insured's injury was foreseeable, and thus not accidental, within the meaning of a

policy that covered "injuries caused solely by an accident" and was governed by ERISA, when insured died in car wreck that occurred when insured was driving while intoxicated); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1088-89 (1st Cir.), *cert. denied*, 498 U.S. 1013 (1990) (holding that insured's injury was foreseeable, and thus not accidental, within the meaning of a policy that defined accident as "an unexpected, external, violent and sudden event" and was governed by ERISA, when insured died after climbing outside of guardrail on an overpass and jumping or falling to the ground forty to fifty feet below); *Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012-13 (W.D. Mich. 1997) (holding that insured's injury was foreseeable, and thus not caused solely by an accident independent of all other causes, within the meaning of a policy governed by ERISA, when insured died in car wreck that occurred when insured was driving while intoxicated); *Walker v. Metro. Life Ins. Co.*, 24 F. Supp. 2d 775, 780-81 (E.D. Mich. 1997) (same); *Miller v. Auto-Alliance Int'l, Inc.*, 953 F. Supp. 172, 175-77 (E.D. Mich. 1997) (same); *Cates v. Metro. Life Ins. Co.*, 14 F. Supp. 2d 1024, 1027 (E.D. Tenn. 1996) (same); *Fowler v. Metro. Life Ins. Co.*, 938 F. Supp. 476, 480 (W.D. Tenn. 1996) (same); *Holsinger v. New England Mut. Life Ins. Co.*, 756 F. Supp. 1279 (E.D. Mich. 1991) (holding that insured's injury was foreseeable, and thus not caused solely by an accident independent of all other causes, within meaning of policy governed by ERISA, when insured died from non-therapeutic, intentional ingestion of codeine).

The parties mentioned, but did not cite, cases deciding whether claimants could recover accidental death benefits when the insured died during autoerotic asphyxiation. The Second, Ninth, and Fifth Circuits, applying *Wickman,* have allowed such claimants to recover, but in each instance, the court reviewed the denial of benefits de novo because the plan did not give to the administrator discretion to interpret the policy or to make benefit determinations. *See Critchlow v. First UNUM Life Ins. Co. of Am.*, —F.3d—, 2004 WL 1773550, at *12-13 (2d Cir. Aug. 9, 2004) (holding that insured's death during autoerotic asphyxiation was caused solely by an accident, not by suicide or intentionally self-inflicted injury, within the meaning of policy governed by ERISA); *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125, 1127-30 (9th Cir.), *cert. denied*, 537 U.S. 1067 (2002) (same); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451-53, 1456 (5th Cir. 1995) (same). Similar reasoning was used by the Eighth and Seventh Circuits in cases deciding whether claimants could recover accidental death benefits when the insured died from a drug overdose. *See, e.g.*, *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962 (8th Cir. 2004) (giving less deference to the administrator due to a conflict of interest and holding that insured's death from acute morphine intoxication was caused by an accident, where the evidence indicated that the insured

event had triggered an injury and the question being reviewed was whether a preexisting condition prevented the injury from being considered accidental.[7] In the cases cited by MetLife,

unintentionally ingested a fatal dose of morphine); *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 463-65 (7th Cir. 1997) (applying de novo review because the plan did not give to administrator discretion to interpret the policy and holding that insured's death from a prescription overdose was caused by an accident where the evidence indicated that the insured unintentionally ingested a fatal dose of codeine).

[7] For examples of this variety of case, see *Metro. Cas. Ins. Co. of N.Y. v. Fairchild*, 220 S.W.2d 803, 804-06 (Ark. 1949) (holding that under state law, insured's fatal heart attack brought about by strain from thawing ice valve on roof was caused by an accident even though act of leaning over roof to thaw the valve was voluntary, and also holding that the injury was caused by "external, violent and accidental means," independent of all other causes even though insured may have had a heart condition, so long as thawing the valve was the proximate cause of the injury); *Carrothers v. Knights of Columbus*, 295 N.E.2d 307, 309-310 (Ill. App. Ct. 1973) (holding that under Illinois law, insured's fatal heart attack brought about by assault was caused by an accident, not by intentional injury inflicted by another, where assailant did not intend to inflict fatal injury, and also holding that the injury was caused by an accident independent of all other causes, even though insured had hardened arteries, so long as the assault was the proximate cause of the injury); *Am. States Ins. Co. v. Morrow*, 409 N.E.2d 1140, 1141-42 (Ind. Ct. App. 1980) (holding that under Indiana law, insured's fatal heart attack brought about by smoke inhalation was caused by "external, violent and accidental means," independent of all other causes, even though insured may have had a heart condition, because jury found that smoke inhalation was the proximate cause of the injury); *Rankin v. United Commercial Travelers of Am.*, 392 P.2d 894, 901-02 (Kan. 1964) (holding that under Kansas law, insured's fatal heart attack brought about by heat and exertion in fighting pasture fire was caused by "external, violent and accidental means . . . independent of all other causes," where there was no evidence that insured previously suffered from physical impairment); *Brown v. Metro. Life Ins. Co.*, 327 S.W.2d 252, 255-56 (Mo. 1959) (holding under Missouri law, insured's fatal coronary occlusion brought about by assault by another person was caused by "external, violent and accidental means," independent of all other causes, even though insured had a heart condition, because jury found that the assault was the proximate cause of the injury); *Hughes v. Provident Mut. Life Ins. Co. of Philadelphia*, 258 S.W.2d 290, 291-94 (Mo. Ct. App. 1953) (holding under Missouri law,

the proximate cause of the injury was not obvious and the requirement that the insured have been engaged in unusual activity or that there have been some external force is intended to ensure that the injury resulted from an accident, rather than from natural causes.[8] In most of the cases cited by

---

that insured's brain hemorrhage brought about by sneezing attack caused by insured inhaling whiskers from his razor was caused "independently of all other causes . . . through external, violent and accidental means," even though insured may have had weakened blood vessel, because death followed closely after sneezing attack and weakened blood vessel was not a proximate cause of injury); *N.Y. Life Ins. Co. v. Wise*, 251 P.2d 1058, 1061-62 (Okla. 1953) (holding that under state law, ruptured veins in esophagus brought about by insured pushing a car up a hill were caused by "external, violent and accidental means" because the ruptured veins were an unforeseeable consequence, and also holding that the injury was independent of other causes, even though insured had cirrhosis of the liver which may have caused varicose veins in his esophagus, because the jury found that pushing the car was the proximate cause of the injury); *Home Benefit Ass'n of Paris v. Smith*, 16 S.W.2d 357, 359 (Tex. Civ. App. 1929); (holding that under state law, ruptured blood vessel brought about by hand cranking a Ford was caused by an accident because it was unforeseeable, even though the cranking was intentional, and also holding that death was an accident, even though insured may have had hardened arteries, because the jury found that hand cranking was the proximate cause of the injury); *Stoffel v. Am. Family Life Ins. Co.*, 164 N.W.2d 484, 487-90 (Wis. 1969) (holding that under Wisconsin law, ruptured aorta brought about by insured lifting a tractor wheel was caused by an accident because it was unforeseeable, even though lifting was intentional, and also holding that death was independent of other causes, even though insured had cystic medionecrosis, because the jury found that insured would have suffered considerable injury absent his pre-existing condition).

[8]For examples of this variety of case, see *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021, 1024 (7th Cir.), *cert. denied*, 525 U.S. 947 (1998) (holding that insured's fatal heart attack was not caused solely by an accident within the meaning of a policy governed by ERISA because there was evidence that insured suffered from heart disease); *Winchester v. Prudential Life Ins. Co. of Am.*, 975 F.2d 1479, 1485-88 (10th Cir. 1992) (applying Utah law to interpret a plan governed by ERISA and holding that a fatal heart attack suffered by insured was not a "bodily injury" where there was no external violence, and also holding that the claimant had not put forth evidence to

MetLife, the insured died from a heart attack. Many of these cases hold that there is a presumption that a heart attack is caused by natural causes, which may be rebutted by evidence of unusual activity, unforeseen trauma, or external force. MetLife cites no cases, nor could we find any, suggesting that there is a presumption that a knee injury or similar ailment is caused by natural causes. When there is no presumption that an injury resulted from natural causes, federal common law does not require proof aimed at rebutting such a presumption.

Contrary to MetLife's assertion, federal common law — from pre-*Erie* diversity cases to present day ERISA cases —

---

rebut presumption that insured suffered from heart disease necessary to prove that the accidental bodily injury was "independent[] of all other causes"); *Riesterer v. Crown Life Ins. Co.*, 653 F.2d 268, 268-70 (6th Cir. 1981) (holding that under Michigan and Oregon law, a fatal heart attack suffered by insured fireman carrying hose inside burning building was not "accidental bodily injury . . . independent of all other causes," where insured was engaged in normal work activities and there was no external force); *Sangster v. Metro. Life Ins. Co.*, 54 F. Supp. 2d 708, 712 (E.D. Mich. 1999) (holding that fatal heart attack suffered by insured immediately following car wreck was not caused solely by an accident within the meaning of a plan governed by ERISA because insured's heart condition was an interdependent cause of insured's death); *Kolowski v. Metro. Life Ins. Co.*, 35 F. Supp. 2d 1059, 1062-63 (N.D. Ill. 1998) (holding that under Illinois law, fatal heart attack suffered by police officer six days after a major drug bust during which officer moved three hundred pounds of cannabis was brought about by natural causes, and not by an accident independent of all other causes, because the drug bust was part of the officer's normal job functions and there was no unforseen trauma or external force); *Desroches v. Monumental Life Ins. Co.*, No. C 97-4593 VRW, 1998 WL 470473, at *3-4 (N.D. Cal. 1998) (holding that under California law, fatal heart attack suffered by insured after choking on her vomit was not caused by an accident independent of all other causes because it was not the result of an unforeseen event, but rather a foreseeable consequence of insured's pre-existing illness); *Howard v. Nat'l Educ. Ass'n of N.Y.*, 984 F. Supp. 103, 108-09 (N.D.N.Y. 1997) (holding that fatal heart attack suffered by insured who was under a great deal of stress from work was not an accidental injury within the meaning of a plan governed by ERISA because there was no unforseen trauma or external force); *Haley v. Am. Int'l Life Assurance Co. of N.Y.*, 789 F. Supp. 260, 263-64 (N.D. Ill. 1992) (same).

focuses upon the expectations and intentions of the insured. Some of these cases adhere to the accidental means versus accidental results distinction, but hold that an injury caused by an unintended and unexpected mishap during the course of an intentional activity is caused by accident.[9]  Other cases

---

[9] *Compare United States Mut. Acc. Ass'n v. Barry*, 131 U.S. 100, 101, 121-22 (1889) (holding that insured's death brought about by injury caused by mishap during intentional jump from platform to ground below was accidental within the meaning of a policy that covered death from bodily injuries caused by "external, violent, and accidental means"); *Aetna Life Ins. Co. v. Kent*, 73 F.3d 685, 685-87 (6th Cir. 1934) (holding insured's death from intentionally pulling trigger of gun pointed at his head that he mistakenly thought was unloaded was accidental within the meaning of a policy that covered death from bodily injuries caused by "accidental means"); *Md. Cas. Co. v. Massey*, 38 F.2d 724, 725-27 (6th Cir.), *cert. denied*, 282 U.S. 853 (1930) (holding that insured's death brought about by infection resulting from wound caused by mishap when insured intentionally plucked hair was accidental within the meaning of a policy that covered "death effected through accidental means"), *with Landress v. Phoenix Mut. Life Ins. Co.*, 291 U.S. 491, 495-97 (1934) (holding that insured's death brought about by sunstroke was not accidental within the meaning of a policy that covered death caused by "external, violent and accidental means" because insured intentionally exposed himself to sun and there was no unforeseeable intervening force caused insured's death); *Nickman v. N.Y. Life Ins. Co.*, 39 F.2d 763, 764-65 (6th Cir.), *cert. denied*, 282 U.S. 855 (1930) (same); *Pope v. Prudential Ins. Co. of Am.*, 29 F.2d 185, 185-86 (6th Cir. 1928) (holding that insured's death brought about by hemorrhage during operation was not accidental within the meaning of a policy that covered death from "bodily injuries effected solely through external violence and accidental causes" because insured intentionally underwent operation, it was not uncommon for patients to hemorrhage during same operation, and there was no evidence of a mishap during insured's operation).

By citing cases that apply the accidental means versus accidental results distinction we do not intend to revive what may be a defunct distinction. Moreover, the Plan language does not indicate that it is an accidental means policy, but MetLife's denial of benefit letters indicate that it believes the plan contains some form of "accidental means" requirement. We note that although the Plan indicates that it will pay "for all losses suffered by one covered individual *resulting* from one accident" J.A. at 333 (GM Plan), the Plan and the Summary Plan Description state that PAI benefits are awarded for "accidental bodily injuries." J.A. at 333 (GM Plan); J.A. at 88 (GM Summ. Plan Description). We cite cases

reject the accidental means versus accidental results distinction and hold that an injury is accidental if it is neither subjectively expected nor objectively foreseeable. *Critchlow v. First UNUM Life Ins. Co. of Am.*, —F.3d—, 2004 WL 1773550, at *12-13 (2d Cir. Aug. 9, 2004); *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125, 1127-30 (9th Cir.), *cert. denied*, 537 U.S. 1067 (2002); *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109-110 (7th Cir. 1998); *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 463-65 (7th Cir. 1997); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1456 (5th Cir. 1995); *Wickman*, 908 F.2d at 1088-89. Jones presented to the administrator evidence that may pass either test. Jones presented evidence that during the course of her bending down to assist a patient, she "hypo" extended her knee. Because Jones presented evidence that her injury was caused by an unintended and unexpected mishap, she has presented evidence that her injury was caused by an accident. Additionally, Jones presented evidence that she did not subjectively expect to injure her knee while bending down to assist a patient during her normal work activities and that this expectation was objectively reasonable. Because Jones presented evidence that her knee injury was neither subjectively expected nor objectively foreseeable, Jones has presented evidence that she suffered an accidental injury.

In this case, MetLife added an eligibility requirement under the guise of interpreting the term "accident" that does not exist in either the Plan documents or federal common law; therefore, MetLife's interpretation of the Plan is arbitrary and capricious. When denying Jones's claim for PAI benefits, MetLife applied an arbitrary-and-capricious definition of the term "accident." Moreover, in its May 7, 2001 denial of Jones's request for administrative review, MetLife indicated

---

following the accidental means versus accidental results distinction because while there may be several definitions of the term "accident" that find support in federal law, the definition proffered by MetLife finds no such support.

that it had not determined whether Jones was totally and permanently disabled.  Because application of the correct definition of accident and the ultimate resolution of Jones's claim requires additional findings of fact, we will remand this case to MetLife. *Compare Univ. Hosps.*, 202 F.3d at 852, *with Williams v. Int'l Paper Co.*, 227 F.3d 706, 715-16 (6th Cir. 2000).

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order granting MetLife's motion for judgment on the administrative record and **REMAND** this case to the district court with instructions to remand this claim to MetLife for reconsideration of Jones's medical evidence in light of this opinion.