BRISCOE, Circuit Judge,
concurring.
I concur in the result, but write separately to make two points regarding the assertion by Wyoming Associated Builders, Inc. (WAB) that the decision to terminate The Lock Shop from the insurance trust was neither arbitrary nor capricious.

Standard of review

First, I am not persuaded, as is the majority, that we are obligated to review the termination decision under the more onerous arbitrary and capricious standard of review. Instead, for the reasons outlined below, I conclude de novo review applies in this instance.
The majority places great weight on the fact that “[b]oth parties agree that arbitrary and capricious review governs this case.” Maj. Op. at 1256. But this ignores the “well-settled [principle] that a court is not bound by stipulations of the parties as to questions of law,” including the appropriate standard of review. Koch v. U.S. Dep’t of Interior, 47 F.3d 1015, 1018 (10th Cir.1995); see United States v. Vontsteen, 950 F.2d 1086, 1091 (5th Cir.1992) (en banc) (“No party has the power to control our standard of review.”); Jones v. Metro. Life Ins. Co., 385 F.3d 654, 660 n. 4 (6th Cir.2004) (“Typically, parties may not determine by agreement [a court’s] standard of review.”). Thus, we must resolve for ourselves, based upon controlling precedent and the relevant facts of this case, what the proper standard of review is in this case.
Generally speaking, a denial of benefits under an ERISA-governed plan “is to be reviewed under a de novo standard unless the ... plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.” Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If, however, the plan at issue confers such discretion, then, absent procedural irregularities, we review the administrator’s decisions under an arbitrary and capricious standard. See Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825-26 (10th Cir.2008). These general standards of review also appear to apply where, as here, there has not been a specific denial of benefits, but rather an employer has been terminated from an ERISA-governed plan. Cf. Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 108 (2d Cir.2008) (applying same standards of review to board of directors’ decision to terminate altogether an ERISA-governed plan).
The Plan at issue in this case states, in pertinent part, that “[i]t is the express intent of this Plan that the Plan Administrator, or its designee, shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant’s rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.” App. at 260. Notably, however, the Plan focuses exclusively on the eligibility of participating individuals for medical benefits, and thus is silent with respect to the payment of premiums by participating employers, as well as with respect to the termination of employers from the Plan. Further, although it is uncontroverted that the *1261 trustees adopted a formal written “late payment” policy in the spring of 2006, nothing in the record on appeal indicates that policy was intended to be part of the Plan. Nor did that “late payment” policy grant the Plan administrator or trustees discretion to interpret its terms (or the terms of the Plan). Lastly, the “late payment” policy afforded the Plan administrator authority only to “recommend” termination, and provided that the ultimate decision on termination would be made by the trustees; it is uncontroverted that this procedure was not followed in terminating The Lock Shop.[1]
Although the written agreement that formed the Trust contains various provisions regarding the “Powers” and “Duties” of the trustees, it likewise is silent with respect to the payment of premiums by employers and the termination of employers from the Plan. Thus, it cannot reasonably be said that this document confers discretionary authority on the trustees to resolve employer terminations.
For these reasons, I conclude that a de novo standard of review applies to the decision to terminate The Lock Shop from the insurance trust.

Merits of the termination decision

As for the merits of the termination decision, I conclude The Lock Shop did not, in making its December 2006 premium payment, violate the late payment policy adopted by the board of trustees on June 1, 2006. That policy reads as follows:

Late Payment Penalties:

The WABIT program is a partial self-funded Trust administered under Federal ERISA guidelines. As such, the timelines [sic] of premium payments is extremely important. Due to some abuses, there will be an immediate implementation of a late payment penalty if premiums are not received timely plus a reasonable grace period. Premiums are due on the first (1st) of each month. Premiums not received (postmarked) by the 10th of each month will have a 25% of premium due, up to a maximum of $500 penalty applied. The Trust Board also recommends the use of ACH transfers for premium payment, which is available from Benefit Administrators [the entity retained by the Trust to perform administrative functions for the Trust, including collection of premiums]. Termination Procedures:
The WABIT program is a partial self-funded Trust administered under Federal ERISA guidelines and there is NOT a premium due grace period. Premiums are due on the first of each month. If premiums are not received by the 10th of each month in which they are due, claim payment will be suspended and a phone call will be made as well as penalties applied. If premiums are not paid by the 15th of each month, the Plan Administrator is notified and if premiums are still not received by the 20th of the month the group is recommended by the Plan Administrator for termination by the Trust Board, with the termination retroactive back to the 1st of each month.
Id. at 272.
I agree with the district court that the term “received” is expressly defined in the *1262 fifth sentence of the Late Payment Penalties provision of the policy to mean “postmarked.” Under that definition, The Lock Shop’s December premium payment was “received” by WAB and its agents on December 19, 2006, when Tami Austin placed it in the hands of Federal Express for delivery to Hilltop Bank on the morning of December 20, 2006. Thus, the premium payment was timely “received” under the terms of the late payment policy.
As for The Lock Shop’s purported failure to pay its December 2006 premium via certified check or the “ACH” method of payment, no such requirement appears in the late payment policy or elsewhere in the Plan. Instead, the “Late Payment Penalties” provision of the late payment policy simply states that “The Trust Board ... recommends the use of ACH transfers for premium payment....” Id. (emphasis added). Thus, The Lock Shop’s use of a regular check, which I note was backed by sufficient funds in The Lock Shop’s account, was entirely proper.

. The record on appeal indicates that The Lock Shop was actually terminated from the Plan by Josh Carnahan, the Plan administrator, and that the trustees simply "affirmed” Carnahan's decision in denying The Lock Shop's appeal. That procedure, however, was not authorized by the "late payment” policy adopted by the trustees. Rather, as noted, Carnahan’s role under the "late payment” policy was merely to “recommend” termination, and the decision whether or not to actually terminate was supposed to rest solely with the trustees.